## THE MOUNT HOPE.

### GARFIELD & PROCTOR COAL CO. v. THE MOUNT HOPE.

(District Court, D. New Hampshire. February 24, 1897.)

#### No. 302.

1. COLLISION—SCHOONER AND TOW—SPEED IN FOG.

   Four and one-half to five miles an hour, in much-frequented waters, during a fog, *held* not immoderate speed for a schooner, which was able by prompt action to avoid actual collision with a tow of unusual length, though she approached so close that the last barge, as an act in extremis, was cut adrift, and ultimately driven ashore and lost.

2. SAME—BARGE CUT ADRIFT IN EXTREMIS AND DRIVEN ON SHORE—PROXIMATE CAUSE.

   A barge cut adrift from the rest of her tow in extremis, through fear of collision with a schooner alleged to have been moving at immoderate speed, was lost in the fog, and came to anchor for some three hours. The wind and sea increasing, she got under way with such sails as she had, to seek shelter, but after a time encountered a current which compelled her to anchor again. The wind rose to a gale, her cables parted, and she was driven ashore and lost. *Held*, that the speed of the schooner, even if excessive, was not the proximate cause of the loss, and she was not liable therefor.

This was a libel in rem by the Garfield & Proctor Coal Company against the schooner Mount Hope, to recover for the loss of a barge which was cut adrift through fear of collision with the schooner.

Chas. Theodore Russell, for libelant.

Carver & Blodgett, for defendant.

ALDRICH, District Judge. The Fantee was a coal barge engaged in carrying coal under tow from Southern to Northern ports, and at about half past 7 o'clock in the morning of September 19, 1896, left Vineyard Haven in tow of the steam tug Orion, for Baltimore. The tow consisted of the barges Lone Star, Macauley, and the Fantee, in the order named. At about half past 10 o'clock, when near Gay Head, the weather became thick and foggy, and so continued into the afternoon. There was a strong wind ahead from a southerly direction and some sea running. Each vessel in the tow was secured to the vessel immediately ahead by a hawser something like 160 fathoms in length (that between the Macauley and Fantee was somewhat longer), and the tow altogether was about three-fourths of a mile in length. The schooner Mount Hope (the alleged offending vessel) left Portsmouth, N. H., September 17, 1896, in ballast, bound for Baltimore, Md. On September 18th she came to anchor in Vineyard Sound, and at about 8:30 in the morning of September 19th left Tarpaulin Cove, and proceeded on her voyage in a southerly and westerly direction. At 10:30 she was closehauled on the starboard tack, with her lower sails set and her topsails and staysails furled, and her mechanical fog horn was being regularly sounded, and the wind was about southwest. At about 10:45, and while proceeding outside the sound south of the Vineyard Haven light ship, she heard the fog whistle of a steamer on her port bow. Very soon a dark object loomed up a little ahead, on her starboard bow, and at about the same time another on her port bow. The master of the Mount Hope, act-

ing upon the assumption that the objects which he had seen were barges in tow of the steamer from which he had heard the fog whistle, and fearing collision, put his helm hard to lee, let go the sheets of his sails, and at once brought his vessel around on the other tack. This maneuver avoided a collision, which was imminent, and which would have taken place but for prompt action. As it was, she was passed by the barge Macauley at a distance of about 100 feet. The Mount Hope did not come in actual contact with any of the vessels, and did not cross the line of the tow at any time. When she sighted the two objects, the one on her port bow and the other on her starboard bow, she maneuvered promptly, going into stays while abreast the Lone Star, came around on the port tack, and went clear. She then drifted past the Macauley in close and dangerous proximity, the situation of the vessels being such as to threaten danger to the Fantee, the rear vessel in the tow. At this time the hawser by which the Fantee was held in tow was cut by the Macauley. There is a conflict upon the evidence whether this action was taken by the Macauley upon her own motion or at the suggestion of the Mount Hope; but I look upon this conflict as immaterial, for the reason that the hawser was cut in reasonable apprehension of danger, and under such circumstances as to be treated as an act resulting from the exercise of judgment in extremis. The Mount Hope drifted with the wind without collision, but in dangerous proximity, across the port bow of the Fantee, which, although without motive power, was still making some headway, and the vessels parting were lost to each other in the fog. The Fantee had no sufficient means for signaling her condition to the Orion, but anchored, expecting her to return, sounding whistles until she anchored, and then bells. The Orion would have come to her rescue if she had known her condition, but the whistles did not reach her, and she was not aware of the fact that the hawser had been cut. The Fantee remained at anchor about three hours. The fog clearing in the afternoon, she found herself in an exposed situation, in the track of vessels, with the wind and sea increasing. About 3 o'clock she got under way with such sails as she had, and made for shelter, and at about 5 o'clock she encountered a current against which she could not make headway, and was forced to anchor off Nashawena. The wind became a gale, and at about 7 o'clock her cables parted, and she went onto the rocks, went to pieces, and became a total loss.

No complaint is made against the maneuvers of the Mount Hope, or her conduct subsequent to the time at which she sighted the tow. The only complaint is that she was negligent in running through water much frequented, at an immoderate rate of speed, in the fog, and that, although actual collision was avoided, her immoderate speed brought her into such dangerous proximity to the other vessels as to precipitate action in extremis, which set in motion a chain of causes from which the loss resulted; the primary fault, as is claimed, being the immoderate speed, which compelled the cutting of the hawser, and from which the chain of events leading to the loss naturally and necessarily followed. The probabilities are that the speed of the Mount Hope was from four and one-half to five knots per hour, quite likely five; but in view of the fact that she was able to avoid the

objects which she made out, and to go clear, and that the dangerous condition resulted from the fact that she was subsequently involved in an unexpected length of tow, I find that her speed was not immoderate. Moreover, if I were to assume that her speed was immoderate under the circumstances, and that the hawser was reasonably cut to avoid apparent danger presented by her precipitate and perilous proximity, still I should find and hold that her negligence was not the proximate cause of the loss, but that the loss resulted from other and intervening causes not foreseen, and for which the Mount Hope was not responsible. Libel dismissed.